Chancellor Rutx,gdge
granted the injunction in this case, restraining the defendant from cutting timber or committing other waste till the trial and determination at law of the rights of the parties. No note has been preserved of the grounds of his decision. The defendant afterwards filed a demurrer, but it was never argued, the parties having compromised.*

[* This is the only case which is remembered, of the Court ofEquity in this state having ever granted an injunction to restrain a defendant in possession, and claiming by an adverse title, from cutting *620 down timber, or exercising any other acts of ownership over his property, till the trial and determination of the right, at law.
There can be no doubt that in its origin, the writ of waste was confined to guardians in chivalry, tenants in dower, and by the curtesy.— Afterwards it was extended by statute to tenants for life, or for years. And when the Court of Chancery began to interfere to prevent waste, by enjoining the tenant in possession, the exercise of this power was, confined strictly to the cases of waste between landlord and tenant, and tenants for life or years, and remainder men or reversioners.
By degrees, it was extended to cases of trespass, between persons claiming by adverse titles ; but this was only to prevent irremediable mischief, or where there were many claimants; to á right of common, or of fishery, or such interests as would require a multitude of, suits at law to try the right. To prevent this evil, the court interfered in the case of the Mayor of York vs. Pilkington. 1 Atk. 282.
In Pilsworth vs. Hopton, 6 Ves. 51, the Lord Chancellor Eldon refused to grant an injunction to restrain the defendant from commit-, ting waste, he being in possession, and claiming by an'adverse title.— He said he did not remember that the court had ever granted an injunction under such circumstances. He added that he remembered, perfectly, being told from the bench very early in life, that if the plaintiff filed a bill for an account, and an injunction to restrain waste, stating that the defendant claimed by a title adverse to his, he stated himself out of court, as to the injunction.
In Mitchell vs. Dors, 6 Ves. 147, an injunction was moved against the defendant, who having begun to get coal in his own ground, had worked into that'of the plaintiff,' The Lord Chancellor said, this is trespass, not waste : but I will grant'the injunction upon the authority of a case before Lord Thurlow, where a landlord of two closes had let one to atenant, who took coal c¡u1¡ of that close, and also out of the other which was not demised; and after some hesitation, he ordered the injunction as to both.
In Hanson vs. Gardner, 7 Vesey, 305, &c. Lord Eldon granted an injunction on affidavits against cutting, and pasturing cattle in a wood: the plaintiff prayingthe injunction 'as. tenant in fee, or as lord of the manor. The defendants denied the former title ; and as to the latter, claimed common of pasture, estovers, &c. The injunction was dissolved ón the coming in ófthe answer.
In this case, the Lord Chancellor stated, “ that the law as to injunctions, has changed very much; and lately, they have been granted more liberally. Formerly, when legal rights were set uptothe extent in which they are in this case, tire court was very tender in granting injunctions.” (2 Bro. C. C. 88.)
He said, “ Lord Thurlow had great difficulties as to trespass In a case before him, there was a demise of close A. to a tenant; the lessor' being also landlord of an adjoining close The tenant dug a mine *621 in the former close. This was waste from the privity: but when we asked an injunction against his digging in the other close, though a continuation of the working in the former, Lord ' Ihurlow hesitated much; but did at last grant the injunction; — First, from the irreparable ruin of the property as a mine: Secondly, as it was a species of trade: and thirdly, upon the principle of this court, enjoining on matter of trespass, where irreparable damage is the consequence.”— (p. 308.) •
“ This led to Robinson vs. Lord Byron, in which also this princi-pie operated, that unless there was some jurisdiction to prevent it, there would be a great failure of justice in this country. The ground of that case was irreparable mischief, which would have been done before there could have been any trial at law, as to the right to let off the ■water.” — (p. 308.)
“ The principle, [as to the granting injunctions to prevent multiplicity of suits] is very clearly stated in Lord Teynham vs. Herbert, 2 Atk. 483; that in these actions there would be no end of bringing suits for trespass.” — (p. 310.)
In Smith vs. Collyer, 8 Ves. 89, the Lord Chancellor refused an injunction against cutting timber, where the title was disputed, as between the devisees (complainants) and the heir at law, contesting the will. The'motion was pressed on the ground, that “the mischief would be irremediable ; and no damages would be a compensation ; and that is the ground of the jurisdiction,” as was held in 3 P. Wins. 889, and 1 Vern 273. The Lord Chancellor said, “ I do not recollect any instance of this sort. The defendant denies that the plaintiffs are devisees. Itis not waste, but trespass on their own shewing. There is no instance of an injunction in trespass, till the case before Lord Thurlow upon a mine ; to which I htive alluded, (see 6 Ves. 147, Mitchell vs. Dors) which though trespass, was very nearly waste. In that case, there toas no dispute -whatsoever about the right. Here the right is disputed.” .The Chancellor made no order for injunction.
In Courthope vs. Maplesden, 10 Ves. 290, Lord Chancellor Eldon granted an injunction against a trespasser cutting timber, by collusion. -with the tenant, without prejudice to the case of. a meye trespass. The Chancellor said, “I have no difficulty in granting the injunction in this case ; but I will not be bound as to what is to be done iipon a mere trespass; though it is strange that there cannot be an injunction in that case to prevent irreparable mischief: the rather, as'there is a writ at common law to prevent the further commission of waste during the trial: whereas, if the court will not interfere against a trespasser, he may go onbyrepeated acts ofdamage, perfectly irreparable. But the ground in this case is, that the trespass partakes of the nature of waste, more than in general cases, the tenant colluding ,• and if the tenant’s act is waste, the act of the other must have so much of the quality of the tenant’s act, as to make it the object of an injunction,” It *622 appears, p. 290, (10 Vesey) that Lord Thurlow had refused exactly such an application, in Mogg v. Mogg; 2 Dickins, 670. But he after-wards altered his opinion, and granted an injunction in Hamilton vs, Worsefield, against a trespasser who pretended some title to the es? tate, and cut timber by collusion isith the tenants, and also against th'e tenants. See also the still later cases illustrating this doctrine, Grockford vs. Alexander. 15 Vesey, 138, Kinder vs. Jones; 17 Ves. 110, Earl Cowper vs. Baker ; 17 Vesey, 128, Grey vs. Duke of Northumberland; 13 Vesey, 236, and 17 Vesey, 281; Twort vs. Twort; 16 Vesey, 128.
The only case which I find decided in America on this point is, that of Steevens vs. Beekman, and others. It was argued before Chancellor Kent, of l^ew-York, who refused to grant the injunction against the repetition of trespass, bydefendants who claimed under an adverse title, or had no title. That eminent judge said it was the case of an ordinary trespass on land, and cutting down timber. The plaintiff was in possession, and had complete and adequate remedy at law. And if the precedent were once set, it would lead to a revolution in practice, and would be productive ofpUblic inconvenience. There was nothing special or peculiar in the caseto call for this particular relief.
It appears from this revision of the decided cases, that the court has) relaxed the ancient strictness of the rule, and has granted injunctions to restrain the commission of trespass in certain specified cases.— Those are where irreparable damage might be the consequence, if the act continued; or "where the trespass has grown into a nuisance ; or where the principle of the prevention of multiplicity of suits among numerous claimants was applicable: or where the peyson cutting tim? her, gotpossession under articles to purchase, as in 15 Ves. 138; or where the trespasser colluded with the tenant. But that without the special circumstances, which have induced the relaxation, the-rule remains in force, to wit, that in a case of trespass, committed by a person who is a mere stranger, or claims under an adverse title, th e court will not enj oin, but leave the plaintiff to his remedy at law.
The court is also very tender ofmedlingin cases between joint tenants, and tenants in common, unless incases of destruction ; but if one of the joint tenants, or tenants in common, takes a lease, or makes an agreement to occupy the proportion of the other, he changes his character, and the court will restrain him from committing waste. Twort vs Twort. 16 Ves. 128.]